THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHIRLEY DEROUIN and KENNETH DEROUIN, husband and wife, and the marital community composed thereof,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH L. KELLAR TRUCK LINE, INC, a Washington Corporation, and DION WILLIAM TORRES and JANE DOE TORRES, husband and wife, and the marital community thereof,<br><br>Defendants. | Case No. C08-1049-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' attempt to admit a video recording allegedly showing Plaintiff Shirley Derouin performing physical acts that contradict her testimony regarding her physical ability. Defendants did not provide the video recording to Plaintiffs prior to trial. This matter also comes before the Court on Defendants' attempt to play an audio recording purporting to demonstrate the sound of the armored truck's engine and backup beeper as it would have sounded at the site of the collision. Defendants similarly did not provide the audio recording to Plaintiffs prior to trial.

The Court excluded both the video and audio recording.

ORDER, C08-1049-JCC
PAGE - 1

I.        THE VIDEO RECORDING

The video recording contains a few minutes of edited clips that appear to show Shirley Derouin and her husband inside and outside various retail stores. The clips show Shirley Derouin walking unassisted, although most clips show her husband assisting her before she walks alone. The clips also show Shirley Derouin walk onto a curb and enter the passenger side of the family truck without assistance from her husband, although, again, the clips show that her husband assisted her to the curb and the rear of the vehicle before Shirley Derouin proceeded on her own. The time-and-date stamp on the video indicates that the footage was recorded less than a month before trial but long after the close of discovery.

Defendants asserted that they intended to use the video recording to impeach Shirley Derouin's testimony. In particular, Defendants claimed that the video recording contradicted Shirley Derouin's testimony that she always wears her neck collar, that she always requires the assistance of someone to prevent falling, that she cannot navigate curbs, and that she cannot move her neck.

Having reviewed the video recording in camera, the Court concluded that the recording provided only a modest amount of impeachment evidence, if any. Impeachment evidence is "that which is offered to discredit a witness to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony." *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993). Contrary to Defendants' assertions, the testimony did not indicate that Shirley Derouin *always* wears her neck collar; the testimony presented was that she usually wears it, that she should wear it, and that she occasionally does not wear it. The testimony did not indicate that Shirley Derouin can *never* navigate curbs; the testimony was that Shirley Derouin has difficulty navigating curbs of which she is unaware but that she can navigate curbs of which she is aware or has been informed. The testimony also was that Shirley Derouin can move around the multiple floors of her house, albeit with difficulty and concern to her family. The testimony did

not indicate that Shirley Derouin can *never* move her neck; the testimony is that she has consistent pain in her neck and considerable difficulty in moving it. The video recording does not meet the standard of contradiction necessary to permit its use for impeachment. *See* 1-12 *Weinstein's Evidence Manual* § 12.01 (2010) ("Under Rule 607, extrinsic evidence may be admitted to impeach specific errors or falsehoods in a witness's direct testimony, subject to Rule 403.").

Moreover, to the extent the video recording may contain some limited impeachment value, the Court excluded the evidence under Federal Rules of Civil Procedure 26 and 37. Rule 26(a)(1)(A)(ii) requires that a party "without awaiting a discovery request, provide to the other parties: . . . a copy . . . of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Additionally, in their discovery requests, Plaintiffs asked for "all copies of photographs, motion pictures, maps, drawings, diagrams, measurements, surveys, and other documents in [Defendants'] possession, describing or concerning the events, happenings, or the scene of the incident." Rule 26(e)(1)(A) requires that a party

> supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.[1]

The Supreme Court has described the broad disclosure and discovery rules as "one of the most significant innovations of the Federal Rules of Civil Procedure." *Hickman v. Taylor*, 329 U.S. 495, 500 (1947). Whereas under the former rules, "[i]nquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method," the current

---

[1] Rule 26 also provides that a party must supplement or correct its disclosures or responses "as ordered by the court." Fed. R. Civ. P. 23(e)(1)(B).

ORDER, C08-1049-JCC
PAGE - 3

rules "invest the deposition-discovery process with a vital role in the preparation for trial." *Id.* at 500–01. Under the current rules, "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial." *Id.* at 501.

Defendants contend that they were under no obligation to provide the video recording to Plaintiffs and that the jury should have seen the recording because Defendants intended to use it "solely for impeachment." *See* Fed. R. Civ. P. 26(a) (exempting from initial and pretrial disclosure material "solely for impeachment"); Local Rules W.D. Wash. CR 16(i) (requiring that a defendant provide to a plaintiff a list of all exhibits, "excluding exhibits to be used for impeachment only"). However, even if the video recording contained only impeachment evidence (which it did not), a party must disclose impeachment evidence in response to a properly tailored discovery request. *See, e.g.*, *Varga v. Rockwell Int'l Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) (calling "so devoid of merit as to be specious" the argument that a party may withhold properly requested discovery material because the party withholding planned to use the material solely for impeachment); *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431, 436 (D. Md. 2006); *Gutshall v. New Prime, Inc.*, 196 F.R.D. 43, 44 (W.D. Va. 2000) (concluding that "surveillance evidence conducted by a defendant in a personal injury case is discoverable [even] if the defendant only intends to use the evidence for impeachment purposes").

Unlike the initial- and pretrial-disclosure rules, the discovery rules do not exempt from disclosure information to be used "solely for impeachment." *See* Fed. R. Civ. P. 26(b)(1) & advisory committee's note ("[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."); 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2015 (3d ed. 2010) ("The initial disclosure requirements exclude items that the disclosing party may use 'solely for impeachment,' but no such categorical limitation applies to material sought through

discovery." (footnote omitted)). Plaintiff requested all motion pictures "concerning the events, happenings, or the scene of the incident." The Court concludes that Plaintiffs' discovery request included the video recording. *See* Fed. R. Civ. P. 37 advisory committee's note ("Interrogatories and requests for production should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery requests, and to do so is subject to appropriate sanctions under subdivision (a)."); *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("We start with the premise that pre-trial discovery is ordinarily accorded a broad and liberal treatment." (quotation marks omitted)). Accordingly, Defendants should have provided Plaintiffs with a copy of the video recording prior to trial.

Furthermore, even if Plaintiffs did not request the video recording through discovery, Defendants should have disclosed it under their initial- and pretrial-disclosure obligations. *See* Fed. R. Evid. 26(a). The recording mostly, if not completely, contained substantive evidence to establish the truth of the matter to be determined by the jury, namely, the extent of Shirley Derouin's injuries. Substantive evidence is "[e]vidence offered to help establish a fact in issue, as opposed to evidence directed to impeach or to support a witness's credibility." *Black's Law Dictionary* (9th ed. 2009); *see also United States v. Crabtree*, 565 F.3d 887, 892 (4th Cir. 2009) ("Courts have long distinguished impeachment evidence from substantive evidence . . . ."); *Newsome*, 437 F. Supp. 2d at 435 ("Statements are useful as substantive evidence if they relate to a plaintiff's *prima facie* case or a defendant's affirmative defenses. Impeachment evidence is used to encourage the trier of fact to look critically at whether the evidence should be believed. In the ordinary case, impeachment evidence has no substantive purpose."). Where material contains both substantive and impeachment evidence, it is not "solely for impeachment" and must be disclosed. *See, e.g.*, *Wilson v. AM General Corp.*, 167 F.3d 1114, 1118 (7th Cir. 1999); *Klonoski v. Mahlab*, 156 F.3d 255, 269–70 (1st Cir. 1998). The Court will not disregard the disclosure requirements. *Chiasson*, 988 F.2d at 517–18 ("Because the

tape is, at the very least in part substantive, it should have been disclosed prior to trial, regardless of its impeachment value. The district court abused its discretion by allowing non-disclosure and admitting the tape into evidence."). Because Defendants did not provide Plaintiffs with the video recording prior to trial, the Court excluded it.[2] *See* Fed. R. Civ. P. 37(c).

Finally, the Court excluded the video recording under Federal Rule of Evidence 403. The modest amount of impeaching evidence contained in the recording, if any, is substantially and vastly outweighed by the danger of unfair prejudice given the substantive evidence contained therein. *See* 8 Wright, *supra* § 2015 ("The difficulty with [allowing a jury to see such a videotape only for impeachment] lies in the wild improbability that any fact-finder could, for instance, actually confine to impeachment use its consideration of motion pictures showing a supposedly crippled plaintiff painting a house. There has been increasing recognition that there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital, that the practical and human limitations of the jury system cannot be ignored. This would seem to be such a context." (quotation marks and footnotes omitted)).

---

[2] *See also* 8 Wright, *supra* § 2015 ("If the risk of perjury is as great as those who oppose discovery of this kind of evidence believe, there is a better solution, as a leading commentator has suggested: 'The values of surprise could be largely preserved by providing discovery or pretrial revelation of impeachment material which falls within the present category only at a time shortly before trial, and only after the party asked about the existence and nature of such material had been given an opportunity—ordinarily by deposition—to commit the inquiring party to a final version of the events and claims related to the impeachment material. This procedure should forestall most conforming testimony, and would afford a reasonably effective means of embarrassing those who might still attempt to meet the impeaching material in untruthful ways. At the same time, it would be possible to prepare to meet impeaching material which is susceptible of honest explanation or refutation. Having preserved the values of surprise, there would be no remaining reasons to deny discovery . . . .'" (quoting Edward H. Cooper, *Work Product of the Rulesmakers*, 53 Minn. L. Rev. 1269, 1318 (1969))).

ORDER, C08-1049-JCC
PAGE - 6

## II. THE AUDIO RECORDING

Defendants also sought to play an audio recording purporting to demonstrate the sound of the armored truck's engine and backup beeper as it would have sounded at the site of the collision. Defendants presented the evidence during their direct examination of the truck driver. Although the driver did not make the audio recording, he testified that it accurately portrayed the sound made by the reversing truck. Defendants retained the audio recording since July 2010, but they did not disclose it to Plaintiffs until the middle of trial.

Demonstrative evidence is best defined as evidence that conveys a "firsthand sense impression." 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 9:22 (3d ed. 2010). Demonstrative evidence must satisfy the relevancy standard of Federal Rule of Evidence 401 and can be excluded under Rule 403 "where its helpfulness is substantially outweighed by the dangers of unfair prejudice, delay, or confusion." *Id.* "Demonstrative evidence requires particularly careful judicial monitoring under [Rule] 611(a) because of its capacity to mislead and because of the potent, and often inalterable, image it leaves in jurors' minds." *Id.* The admissibility of demonstrative evidence lies largely within the Court's discretion. *Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991). Moreover, when re-creating an event, demonstrative evidence must be substantially similar to the event in question. *Futi v. United States*, No. 08-00403, slip op. at 23 (D. Haw. July 22, 2010) (citing *Mihailovich v. Laatsch,* 359 F.3d 892, 908 (7th Cir. 2004); *Hinkle v. City of Clarksburg,* 81 F.3d 416, 425 (4th Cir.1996); *Persian Galleries, Inc. v. Transcon. Ins. Co.,* 38 F.3d 253, 258 (6th Cir.1994); *Vigilant Ins. v. Sunbeam Corp.*, 231 F.R.D. 582, 594 (D.Ariz. 2005)).

Defendants did not establish that the sound heard in the recording was substantially similar to the sound that Shirley Derouin would have heard while standing in the lot where the accident took place. The only foundation that Defendants provided for the audio recording was the driver's testimony that the previously heard recording accurately reflected the sounds made within the loading zone. Yet, the courtroom, unlike the loading zone, is a confined space. The

courtroom, unlike the loading zone, is a state-of-the-art facility containing ceilings, floor coverings, wall coverings, electronic equipment, and furniture placement designed to amplify sound and enhance acoustics. The courtroom, unlike the loading zone, contains little to no ambient noise. Defendants did not account for any of these factors. Further, the truck driver testified that he remained inside the truck during the collision, yet the audio recording, heard in camera, grew louder, as though the truck moved closer to the recording device. Defendants did not satisfy the Court that the audio recording heard in the courtroom, provided through the testimony of a lay witness, was substantially similar to the noise heard from Shirley Derouin's perspective at the time and location of the collision. *See* Fed. R. Evid. 611 ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of truth . . . .")

//
//
//
//
//
//
//
//
//
//
//
//
//
//

ORDER, C08-1049-JCC
PAGE - 8

Similarly, under Rule 403, the Court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of confusion of the issues [or] misleading the jury." The Court has "considerable latitude in performing a Rule 403 balancing test." *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 688 (9th Cir. 2001) (quoting *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999)). The audio recording, if simply played over the courtroom's audio system, without the testimony of an expert witness, without accounting for the different physical setting, and without meaningful foundation, raised a substantial risk of both confusing the issues and misleading the jury. Accordingly, the Court excluded the evidence.[3]

DATED this 4th day of November, 2010.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[3] As with the video recording, Defendants did not disclose to Plaintiffs the audio recording prior to trial. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii), 26(a)(3)(A)(iii), 26(b)(1). Defendants' failure to disclose is further reason to exclude the audio recording. *See* Fed. R. Civ. P. 37(c)(1).